# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * * *
REBECCA WHITNEY and              *
RANDALL WHITNEY, parents of      *    No. 10-809V
S.W., a minor,                   *    Special Master Moran
                                 *
              Petitioners,       *    Filed: July 27, 2016
                                 *
      v.                         *
                                 *    Attorneys' fees and costs;
                                 *    expert hours, flat rate for appearance.
SECRETARY OF HEALTH              *
AND HUMAN SERVICES,              *
                                 *
              Respondent.        *
* * * * * * * * * * * * * * * * * * * *
```

Ronald C. Homer, Conway, Homer & Chin-Caplan, P.C., Boston, MA, for Petitioners;
Lara A. Englund, United States Dep't of Justice, Washington, DC, for Respondent.

**PUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS**[1]

     After a remand from the Court of Federal Claims, petitioners Rebecca and Randall Whitney received compensation from the Vaccine Program. This award entitles them to reasonable attorneys' fees and costs and they have filed a motion requesting those fees and costs. The Whitneys initially sought $205,865.22. The Secretary filed a weak response, arguing a reasonable amount is no more than $146,000 and could be as little as $97,000. The petitioners are awarded $195,076.22.

---

[1] The E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

I.     **Background**[2]

On November 22, 2010, the Whitneys filed their case on a pro se basis. Their current attorney (Mr. Ronald Homer) became counsel of record in March 2011. Mr. Homer essentially restarted the case at that time.

Around three months of age, the Whitneys' child (S.W.) developed an upper respiratory infection. This infection was probably, but not certainly, a manifestation of a human herpes virus, type 6 (HHV-6). At S.W.'s 4-month well-baby checkup, S.W. received a set of vaccinations including the diphtheria-tetanus-acellular pertussis (DTaP) vaccine. About 10 days later, S.W. began to manifest neurologic problems.

His neurologic problems worsened and he was hospitalized. Doctors eventually diagnosed S.W. as suffering from transverse myelitis. The treating doctors were not certain of the cause of his transverse myelitis. Doctors pointed to the HHV-6 infection and the preceding vaccination. See exhibit 2 at 264-65.

The transverse myelitis is relatively severe. S.W. requires a wheelchair and has challenges learning. Exhibit 22 at 3.

After gathering medical records, the Whitneys obtained a report from a neurologist, Yuval Shafrir. Exhibit 16. The Secretary filed reports from two experts: Max Wiznitzer and Raoul Wientzen. Like Dr. Shafrir, Dr. Wiznitzer is a neurologist. Exhibit C. The Secretary added a specialist in infectious diseases, Raoul Wientzen, to discuss HHV-6. Exhibit A. Because the Secretary had obtained a report from a non-neurologist, the Whitneys retained a second expert, immunologist and infectious disease specialist James Oleske. Exhibits 18, 20.

Before the hearing, both parties filed briefs. The hearing was conducted in two sessions. On February 27, 2014, the two neurologists testified. On March 7, 2014, Dr. Oleske and Dr. Wientzen testified. After the hearing, the parties again filed briefs.

A decision was issued on May 8, 2015. It found that the Whitneys were not entitled to compensation. 2015 WL 4537210.

---

[2] A more detailed recitation of events can be found in the initial decision. 2015 WL 4537210 (May 8, 2015).

2

The Whitneys filed a motion for review, accompanied by a 41-page memorandum. The Secretary responded.

The Court granted the motion for review and vacated the May 8, 2015 decision. The Court did not find any facts, but, instead, recommended obtaining testimony from the treating doctors who had commented on either the vaccines or HHV-6 as a cause for S.W.'s transverse myelitis. 122 Fed. Cl. 297 (2015).

The undersigned implemented the Court's instructions. The Whitneys' counsel (more precisely a paralegal at the Conway, Homer, Chin-Caplan P.C. law firm) took on the task of finding the doctors and arranging their participation. A hearing was scheduled to take place on September 2, 2015, in Grand Rapids, Michigan. Order, issued August 26, 2015.

While the parties (particularly the Whitneys) were tending to the logistics of scheduling this hearing, they were also, at the undersigned's urging, considering resolution. In post-remand status conferences, the undersigned commented that the opinions of the treating doctors were unknown, and this uncertainty meant both parties bore risk of continued litigation. With this encouragement, the parties reached a tentative agreement.

With a tentative agreement in hand, the parties requested that the Court extend the time for remand. The Court did so. Order, filed Sep. 1, 2015. In due course, the parties finalized their tentative agreement. The parties' stipulation was incorporated into a decision. 2015 WL 9031352 (Dec. 1, 2015). This decision awarded the Whitneys a lump sum plus an annuity to last the remainder of S.W.'s life. This action concluded the merits phase of the case.

On April 14, 2016, the next phase of the case began, when the Whitneys filed for attorneys' fees and costs. Individual components were:

| Attorneys' Fees | $149,460.75 |
|---|---|
| Attorneys' Costs | $49,704.47 |
| Petitioners' Costs | $350.00 |
| Other Costs | $6,350.00 |
| TOTAL | $205,865.22 |

The Secretary filed a response. Although the Federal Circuit has endorsed the lodestar method as a way of determining a reasonable amount of attorneys' fees, Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1347-48 (Fed Cir. 2008), the Secretary's response addressed neither the proposed hourly rate nor the number of hours requested. Likewise, the Secretary did not comment on any requested costs. Instead, the Secretary proposed a range of $97,000 to $146,000 without citing any cases. Resp't's Resp., filed May 2, 2016, at 3. The Secretary's approach is now unfortunately routine. See Dorego v. Sec'y of Health & Human Servs., No. 14-337V, 2016 WL 1635826 (Fed. Cl. Spec. Mstr. April 4, 2016).

The Whitneys filed a reply, which mostly repeated arguments their attorney had made in other cases. They also added a request for $464 in supplemental fees. Pet'rs' Supp'l Mot. for Attorneys' Fees, filed May 12, 2016.

## II.  Analysis

The Whitneys' motion contains two parts: a request for attorneys' fees and a request for costs. These are addressed separately.

### A.  Attorneys' Fees

The Vaccine Act authorizes special masters to award only "reasonable" attorneys' fees. 42 U.S.C. § 300aa–15(e)(1). To determine the reasonableness of a request for attorneys' fees, the court must first conduct a lodestar analysis in which a reasonable hourly rate is multiplied by a reasonable number of hours. See Avera, 515 F.3d at 1348; Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Avera, 515 F.3d at 1348.

Here, the lodestar calculation produces a reasonable award of attorneys' fees. A separate adjustment is not required. Thus, the analysis below focuses on (1) a reasonable hourly rate and (2) a reasonable number of hours.

#### 1.  Reasonable hourly rate

McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 563423 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), found reasonable hourly rates for attorneys in the Conway, Homer, Chin-Caplan, P.C. law firm. Special masters, including the undersigned, have followed McCulloch. See Avchen v. Sec'y of Health & Human Servs., No. 14-279V, 2015 WL 9595415 (Fed. Cl. Spec. Mstr. Dec. 4, 2015). The Whitneys' attorneys have billed in accord with the McCulloch

4

rates and the Secretary did not impose any specific objection. The undersigned finds the requested hourly rates reasonable.

## 2. Reasonable number of hours

According to the United States Supreme Court, fee applicants should exercise "billing judgment." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). This obligation includes attorneys who work in the Vaccine Program. Saxton, 3 F.3d at 1521.

Here, there is relatively little evidence that the Whitneys' attorneys exercised any billing judgment. The attorneys' timesheets include more than 1000 entries. Each entry, except one, is marked "billable." The only exception was on Dec. 17, 2015. The remaining 649 hours are, according to petitioners' attorneys' timesheets, billable. See timesheets at internal page 97.

Have the Whitneys' attorneys truly concluded that the 649 hours contain no duplication of tasks? Do any of the more than 1000 entries contain charges that are excessive? The attorneys may believe they are justified in claiming all these hours, reasoning "we only perform the work that was necessary. Therefore, all performed work was reasonable."

The obligation to remove "excessive, redundant, or otherwise unnecessary" hours is well-established. Saxton, 3 F.3d at 1521. However, any voluntary reduction comes at the expense of a law firm's revenue. In practical terms, fee applicants have a monetary incentive to request as much as possible and then leave any reductions to their adversary.

Traditionally, the Secretary has, to a greater or lesser degree, policed fee applications. Because awards of attorneys' fees are paid from the Trust Fund that the Secretary administers, the Secretary has an interest in protecting against excessive awards, which necessarily deplete the Trust Fund. Over the years, the Secretary has fulfilled her duty with a two-step process: (1) informal discussions, and (2) formal litigation. In most cases, a sense of reasonableness and a spirit of compromise led to quick and mutually agreeable resolutions. In some cases, the Secretary's attorney did not interpose any objection. In other cases, the Secretary would communicate concerns or objections about the fee application. When informed about those potential challenges, a petitioner's attorney would reduce the amount requested, and, in turn, the Secretary's attorney agreed not to object.

Without an objection, the special master usually found the (reduced) amount reasonable.[3] In a minority of cases, the parties could not reach an accommodation. In such cases, the Secretary would present formal objections and the petitioners would reply. Under either of these scenarios, the special master had the benefit from an evaluation from the Secretary.

Now, the Secretary is largely absent. The Secretary's most concrete objection is to propose a range. However, as the petitioners' reply notes, the Court of Federal Claims held that a range approach is inconsistent with the lodestar methodology. Guerrero v. Sec'y of Health & Human Servs., 120 Fed. Cl. 474, 482 (2015), mot. for rev. granted in part and denied in part after remand, 124 Fed. Cl. 153 (2015), app. dismissed, No. 2016-1753 (Fed. Cir. April 22, 2016).[4] Moreover, the Secretary does not explain how it selects cases falling into the range, and, in this case, as in many other recent cases, the Secretary provided no examples of comparable cases.[5] Therefore, at best, the Secretary is providing information that has little utility.

Without the Secretary's participation, the undersigned has waded through the timesheets. In this review, the undersigned has been guided with his experience with this law firm. See Saxton, 3 F.3d at 1521. The undersigned has paid particular attention to potential problem areas.

1. Multiple attorneys. A recurring issue is that this law firm assigns multiple attorneys to work on one case. This staffing practice is not consistent with the work of other firms. Most firms assign, at most, one partner and one associate and achieve good results. See Caves v. Sec'y of Health & Human Servs., No. 07–443V, 2012 WL 6951286, at *4 (Fed. Cl. Spec. Mstr. Dec. 20, 2012) (identifying attorneys with different staffing models), mot. for review denied, 111 Fed. Cl. 774 (2013); Whiffen v. Sec'y of Health & Human Servs., No. 03–1223V,

---

[3] Rarely, special masters found unreasonable components in a fee application sua sponte. Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 315-16 (2008).

[4] If the Secretary wanted to advocate for a methodology based upon ranges, the Secretary's recourse was to seek review in the Federal Circuit. Although the Secretary filed a notice of appeal, the parties agreed to a dismissal. The Secretary's abandonment of the appeal in Guerrero leaves the opinion of the Court of Federal Claims intact.

[5] More recently, when the Secretary has proposed a range, the Secretary has started to cite cases falling within her proposed range.

2010 WL 5558348 (Fed. Cl. Spec. Mstr. Dec. 15, 2010) (describing different law firm practices for cases in the autism omnibus proceeding).

Here, the original associate was Ms. Amy Fashano. The 3.1 hours she spent at the inception of the case are credited. After a few months, the primary associate became Ms. Meredith Daniels. Ms. Daniels spent the vast amount of time litigating the case and all her time is accordingly credited. After Ms. Daniels effectively took over, Ms. Fashano billed small tasks that duplicated work Ms. Daniels had already performed. These extra hours from Ms. Fashano are deducted.

Similarly, two other associates, Ms. Christina Ciampolillo and Mr. Joseph Pepper, also worked on the case. They often edited routine and short documents such as status reports and motions for enlargement of time. Ms. Daniels is capable of this work. A client paying for the services of this law firm would be unlikely to engage another associate. Thus, this time is removed. On the other hand, review of more significant documents is reasonable. E.g. entry for January 8, 2014 (prehearing brief). See Avchen, 2015 WL 9595415, at *5-6.

2. Mr. Homer. The point about associate staffing is similar to a question about partner level contributions. One of the partners, Mr. Homer, is listed as counsel of record. He charges for reviewing all documents filed into the record. However, Mr. Homer did not participate in status conferences, interact with the client routinely, or attend the trial.

This practice of charging partner rates for review of documents filed in a case an associate is handling appears unique to this firm. Special masters have addressed this issue. Tomlinson v. Sec'y of Health & Human Servs., No. 13-763V, 2015 WL 7068558, at *4 (Fed. Cl. Spec. Mstr. Oct. 23, 2015); Austin v. Sec'y of Health & Human Servs., No. 10-362V, 2013 WL 659574, at *14 (Fed. Cl. Spec. Mstr. Jan. 31, 2014).

If a client were given a choice between paying an attorney at a rate of $400 an hour and paying an attorney at a rate of $280 an hour to perform the same task, the paying client would choose the less costly option. Ms. Daniels, who participated in numerous status conferences, was capable of reading any order from any status conference. Charges associated with Mr. Homer's time are excessive and reduced to Ms. Daniels' rate.

Based on the foregoing, the deductions for associate staffing and Mr. Homer total $2,478.00. Compared to the amount of fees originally requested

(approximately $150,000), this deduction is relatively trivial, slightly more than one and a half percent.

The size of the deduction leads to additional questions. Should the petitioners' attorney exercise "billing judgment" to remove these items voluntarily? Deleting these entries before submitting a fee application would speed the process of adjudication. On the other hand, when the deductions are so small, should the undersigned find the overall amount reasonable and not examine entries? A less thorough review would also speed processing.

Other than the two points about staffing, the remaining activities are reasonable. In proceedings before the special master, the petitioners obtained reports from two experts, filed a brief before the hearing, and filed two briefs after the hearing. The hearing was conducted in two separate sessions, about two weeks apart, and the interval between sessions required extra preparation.

The Whitneys also filed a motion for review. In past cases, attorneys from this law firm have copied and pasted from one brief to another and then charged as if the work were freshly produced. This practice is not appropriate. Davis v. Sec'y of Health & Human Servs., 105 Fed. Cl. 627, 638 (2012); see also Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 730-31 (2011) (discussing copying and pasting in the context of a different attorney).

That past practice did not occur here. In conjunction with this decision, the undersigned reviewed the trial briefs and the motion for review. The motion for review contains new arguments, not presented in briefs below. The timesheets are consistent with an extra effort at the motion for review level. For the initial post-trial brief, Ms. Daniels spent approximately 24 hours drafting it. A partner, Kevin Conway, contributed 4.5 hours of editing. For the reply brief, the respective amounts of time were 4 hours and 0.7 hours. For the motion for review, Ms. Daniels and Mr. Conway spent relatively similar amounts of time: approximately 23 hours and approximately 7 hours. Their efforts were amplified by another attorney, Sylvia Chin-Caplan. Ms. Chin-Caplan added another 21 hours to writing the motion for review.

As mentioned above, the collective efforts produced a brief that contained new arguments. As such, the attorneys did not duplicate large sections of previous briefs. Thus, the time spent on the motion for review is credited in full.

Likewise, the attorneys charged a reasonable amount for litigating the amount of fees. The supplemental fee motion includes only 1.1 hours from Ms.

8

Daniels, 0.1 hours from Mr. Homer, and 0.4 hours from Mr. Pepper. The associated brief reproduces arguments that the firm has presented in other cases. Ms. Daniels' work was to conform the standard brief to the specifics of this case. Her work, Mr. Homer's work, and Mr. Pepper's work are reasonable. The fee for the reply brief is $464.00, which is awarded in full.

For attorneys' fees, petitioners are awarded $147,446.75.

### B. Costs

The Whitneys also request costs, which they organize into three components: costs for the law firm ($49,704.47), costs for the petitioners ($350.00), and other costs ($6,350.00). As with fees, the Secretary did not challenge any items of costs specifically.

Most of the costs are relatively routine, such as costs for obtaining medical records, mailings, photocopies, telephone, and the transcript from the hearing. Another set of expenses relate to travel for the hearings. All of these costs are reasonable and documented, and are awarded in full.

The bulk of the costs concerned time for Dr. Shafrir and Dr. Oleske. See entries for September 30, 2013, April 20, 2014, and August 7, 2014. Like attorneys' fees, reasonable expert fees are determined using the lodestar method in which a reasonable hourly rate is multiplied by a reasonable number of hours.

Dr. Shafrir seeks a total of $20,425.00. This figure represents 47.5 hours at $350 per hour plus 9 hours at $500 per hour. Dr. Shafrir charged a higher hourly rate for participating in the February 27, 2014 hearing.

Dr. Shafrir's proposed rate of $350 or $500 per hour for work performed from November 2012 through February 2014 is reasonable. Both rates are consistent with rates special masters have credited for neurologists. See Brown v. Sec'y of Health & Human Servs., No. 09–426V, 2012 WL 952268, at *11 (Fed. Cl. Spec. Mstr. Feb. 29, 2012) (awarding Dr. Lawrence Steinman, a neurologist based in Stanford, California, $450-$500 per hour).

The amount of time Dr. Shafrir spent was also reasonable. In the future, however, Dr. Shafrir should describe his activities in more detail. Consolidating two days of activities, totaling 9 hours, into three lines of text, totaling 13 words, does not provide much detail. Experts, like attorneys, should avoid block-billing. Caves v. Sec'y of Health & Human Servs., 111 Fed. Cl. 774, 781 (2013).

Dr. Oleske seeks a total of $14,500.00. He proposes a rate of $500 per hour and he seeks compensation for 29 hours. In addition, Dr. Oleske includes a request for 10 hours of work for an assistant, who charges $100 per hour.

Dr. Oleske's rate of $500 per hour is accepted as reasonable. See Sexton v. Sec'y of Health & Human Servs., No. 99-453V, 2015 WL 7717209, at *4 (Fed. Cl. Spec. Mstr. Nov. 9, 2015). However, his time is not.

For his first report (exhibit 18), Dr. Oleske has invoiced for 18 hours plus 5 hours of assistant time. The work product is barely three double-spaced pages. Although Dr. Oleske stated he reviewed medical records, his report contains only a succinct recitation of facts without any cites to underlying records. Furthermore, although Dr. Oleske stated he spent more than two hours reviewing literature on HHV-6, his report cites only one article. That article is a three-page extract from a common source of information, the American Academy of Pediatrics Red Book. Under these circumstances, a reasonable amount of time is 10 hours. With respect to the administrative assistant, the petitioners are given a benefit of the doubt that 5 hours is reasonable.

For his second report (exhibit 20), Dr. Oleske has invoiced for 3 hours plus another 5 hours of assistant time. This report was approximately 2.5 double-spaced pages. Of these 2.5 pages, approximately one page was a lengthy quotation from an article Dr. Oleske cited. Thus, the actual fresh work product is about 1.5 pages. Dr. Oleske cited 7 articles, of which he wrote 5. The amount of time for this report (3 hours) is somewhat high but within a reasonable range. Dr. Oleske is also credited for 8 hours of time for attending the hearing. Finally, his assistant's time is again credited, although with some concerns.

The remaining expenses incurred by the law firm, including costs for the life care planner and for an attorney to arrange a guardianship, are reasonable. The adjustments for Dr. Oleske's first report are $4,000. Therefore the Whitneys are awarded $45,704.47 in attorneys' costs. The petitioners are also awarded their own costs, $350.

The last item of cost is unusual. A doctor who treated S.W., William Rush, has invoiced for $350 for chart review plus $6,000 for testimony that Dr. Rush had agreed to provide in the hearing scheduled for Wednesday, September 2, 2015. However, on Monday, August 31, 2015, the parties reached a tentative agreement and the hearing was canceled.

The cancellation of the hearing two business days before it was scheduled justifies an award to Dr. Rush in some amount. Demar v. United States, 199 F.R.D. 617, 620 (N.D. Ill. 2001). The question is how much is reasonable?

Federal district courts have split over whether treating doctors should be compensated as fact witnesses or expert witnesses. Baker v. John Morrell & Co., 263 F. Supp.2d 1161, 1206 (N.D. Iowa 2003); Demar, 199 F.R.D. at 618. Here, the Secretary has not made any argument pro or con. In the absence of an objection from the Secretary, Dr. Rush will be compensated at a reasonable expert rate.

Even at an expert rate, Dr. Rush's proposed charge is not reasonable. The parties arranged for Dr. Rush to testify first (starting at 8:30 AM) to minimize any wait time. The parties also anticipated his testimony would last 1.5 hours ending at 10:00 AM. To be generous, Dr. Rush may have kept his schedule free until noon, meaning he committed to 3.5 hours. Even if Dr. Rush testified as scheduled, his afternoon was open for usual activities, including seeing patients.

Under the circumstances, a charge of $6,000 is exorbitant. A reasonable amount of time for Dr. Rush's anticipated schedule is 3.5 hours. See Broushet v. Target Corp., 274 F.R.D. 432, 434 (E.D.N.Y. 2011) (awarding compensation to expert only for time spent in deposition). Another hour is added for chart review. The total reasonable compensation for Dr. Rush is $1,575 (4.5 x $350).

### III.   Additional Comments

The petitioners originally requested $205,865.22 in attorneys' fees and costs, an amount that was amended to $206,329.22. This decision awards $195,076.22, which is 95 percent of the amended amount.

To determine this result, the process consumed a substantial amount of judicial resources. While the duties in managing a docket and deciding cases vary, recently the undersigned has spent a significant amount of time on resolving attorney fees, perhaps in excess of 50 percent.

A few years ago, an expenditure of such judicial resources probably would not have been needed. From the undersigned's experience in adjudicating over one hundred fee applications, it is highly likely that counsel for the parties could have reached a result very close (maybe a little less, maybe a little more) to the amount determined here after a few hours of discussion. The Secretary's unwillingness to participate in compromises has increased litigation.

Once special masters are forced to determine reasonable attorneys' fees and costs, they inevitably will attempt to write opinions that provide an adequate basis for their decisions. Guerrero, 120 Fed. Cl. at 480; Davis, 105 Fed. Cl. at 639. Hence, the length of this decision.

The present system for resolving fees is not good for other petitioners in the Vaccine Program whose claims await adjudication. It is also bad for the attorneys who represent petitioners whose statutorily-endorsed requests for payment await adjudication. Some other system would be better.

## IV. Conclusion

The Whitneys are entitled to a reasonable amount of attorneys' fees and costs. They have established a reasonable amount is $195,076.22. This amount shall be made payable as follows:

**$193,151.22** to the petitioners and their attorney, Ronald C. Homer;

**$350.00** to the petitioners; and

**$1,575** to Ronald C. Homer and William Rush.

The Clerk's Office is instructed to issue judgment in accord with this decision.

**IT IS SO ORDERED**.

s/Christian J. Moran<br>
Christian J. Moran<br>
Special Master